## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### NO. 22-10089-A

### RAFAEL CENDAN,

**Plaintiff/Appellant,**

**v.**

### JOSE TRUJILLO, et al.,

**Defendants/Appellees.**

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## CASE NO. 16-cv-21775-KMW
## HONORABLE KATHLEEN M. WILLIAMS
_____

### APPELLANT'S REPLY BRIEF
_____


**HOLLAND & KNIGHT LLP**
**Rebecca M. Plasencia**
**Anthony J. Sirven**
**Gabriel S. Godoy-Dalmau**
**Jason A. Fitzgerald**
**Chazz T. Freeman**
**701 Brickell Avenue, Suite 3300**
**Miami, Florida 33131**
**Tel: (305) 374-8500**
**Fax: (305) 789-7799**

*Pro Bono* **Counsel for Appellant**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Appellant, pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-1, identifies the following people and entities as having an interest in the outcome of this appeal:

1.  Cendan, Rafael — Plaintiff/Appellant

2.  Coello, Jessica — Defendant/Appellee

3.  Fitzgerald, Jason A. — Counsel for Plaintiff/Appellant

4.  Freeman, Chazz T. — Counsel for Plaintiff/Appellant

5.  Godoy-Dalmau, Gabriel S. — Counsel for Plaintiff/Appellant

6.  Gonzalez, Jorge — Defendant/Appellee

7.  Holland & Knight LLP — Counsel for Plaintiff/Appellant

8.  Hon. Judge Williams, Kathleen M. — U.S. District Court

9.  Magistrate Judge Torres, Edwin G. — U.S. District Court

10. Magistrate Judge White, Patrick A. — U.S. District Court

11. Miami-Dade County

12. Miami-Dade County Attorney's Office

13. Morales, Marloys — Defendant/Appellee

14. Pichardo, Richard — Defendant/Appellee

15. Plasencia, Rebecca M. — Counsel for Plaintiff/Appellant

16. Rodriguez, Jason — Defendant/Appellee

*Rafael Cendan v. Jose Trujillo, et al.*                                    **No. 22-10089-A**

17.     Sirven, Anthony J. — Counsel for Plaintiff/Appellant

18.     Trujillo, Jose, — Defendant/Appellee

19.     Zaron, Erica S. — Counsel for Defendants/Appellees

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ..........................................C-1

TABLE OF AUTHORITIES .................................................................. iii

ARGUMENT ........................................................................................1

I.  The District Court Erred In Applying *Heck* To Selectively Bar
    Cendan's Excessive force Claim ...................................................2

    a.  Cendan's Guilty Plea Offers No Predicate Facts To Which *Heck*
        May Attach ........................................................................3

    b.  Cendan's Excessive Force Claim Is Not Logically Inconsistent
        With His Resisting Arrest With Violence Plea ....................................4

    c.  *Heck* Cannot Be Applied Selectively To Cendan's Claim ..................5

    d.  Cendan Did Not Waive The Pre-Restraint Heck Bar Appeal ..............7

        i.  Cendan Addressed This Issue With The District
            Court ..........................................................................7

        ii.  Applying Waiver Here Would Be Unjust ..................................8

    e.  Judicial Estoppel Is Inapplicable ...........................................9

        i.  There Are No Inconsistent Positions ......................................10

        ii.  The District Court *Rejected* Cendan's Instant
            Position ......................................................................11

        iii.  Cendan Will Derive No Unfair Advantage ..............................12

II.  The District Court Erred In Applying Qualified Immunity To
    Selectively Bar Cendan's Excessive force Claim .........................13

    a.  The District Court Failed To View The Record In Cendan's
        Favor ..............................................................................14

i

# TABLE OF CONTENTS

**Page**

b.    Defendants Are Not Entitled To Qualified Immunity ........................19

    i.    Defendants Violated Cendan's Constitutional Rights ........................................................................................20

    ii.    Cendan's Constitutional Right To Be Free From Excessive Force Was Clearly Established At The Time ...............................................................................23

CONCLUSION ...................................................................................25

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................26

CERTIFICATE OF SERVICE ...............................................................26

# TABLE OF AUTHORITIES

**CASES**                                                           **Page**

*Brooks v. Miller*,
    78 F.4th 1267 (11th Cir. 2023) ..................................................................18

*Brown v. Huntsville*,
    608 F.3d 724 (11th Cir. 2010) ....................................................................20

*Cendan v. Trujillo*,
    779 F. App'x 688 (11th Cir. 2019) .........................................................*passim*

*Chasse v. McCraney*,
    174 Fed. App'x 473 (11th Cir. 2006) ..........................................................13

*Conner v. Lafarge*,
    343 Fed. App'x 537 (11th Cir. 2009) ..........................................................18

*Cutino v. Untch*,
    79 F. Supp. 3d 1305 (S.D. Fla. 2015)..........................................................13

*Dyer v. Lee*,
    488 F.3d 876 (11th Cir. 2007) ..............................................................2, 4, 7

*Erickson v. Pardus*,
    551 U.S. 89 (2007)........................................................................................9

*Graff v. Aberdeen Enterprizes*,
    65 F.4th 500 (10th Cir. 2023) ......................................................................6

*Graham v. Connor*,
    490 U.S. 386 (1989).....................................................................................20

*Hadley v. Gutierrez*,
    526 F.3d 1324 (11th Cir. 2008) ...............................................................1, 4

*Harrigan v. Metro Dade Police Dep't Station #4*,
    977 F.3d 1185 (11th Cir. 2020) ...................................................................4

*Henley v. Payne*,
    945 F.3d 1320 (11th Cir. 2019) ...............................................................2, 6

# TABLE OF AUTHORITIES

**CASES**                                                                **Page**

*Montero v. Nandlal*,
   597 Fed. App'x 1021 (11th Cir. 2014) ........................................................19

*Myers v. Bowman*,
   713 F.3d 1319 (11th Cir. 2013) ............................................................13, 15

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ...............................................................................10

*Patel v. Madison*,
   959 F.3d 1330 (11th Cir. 2020) .................................................................24

*Penley v. Eslinger*,
   605 F.3d 843 (11th Cir. 2010) ..................................................................14

*Priester v. Riviera Beach.*,
   208 F.3d 919 (11th Cir. 2000) ..................................................................23

*Ramirez v. Sec'y, U.S. Dept. of Transp.*,
   686 F.3d 1239 (11th Cir. 2012) ...................................................................8

*Sconiers v. Lockhart*,
   946 F.3d 1256 (11th Cir. 2020) ......................................................2, 3, 4, 24

*Sebastian v. Ortiz*,
   918 F.3d 1301 (11th Cir. 2019) .............................................................23, 24

*Singletary v. Vargas*,
   804 F.3d 1174 (11th Cir. 2015) .................................................................14

*Smith v. Mattox*,
   127 F.3d 1416 (11th Cir. 1997) .............................................................21, 23

*Sova v. Mt. Pleasant*,
   142 F.3d 898 (6th Cir. 1998) ................................................................14, 24

*Stephens v. DeGiovanni*,
   852 F.3d 1298 (11th Cir. 2017) .............................................................21, 24

*Tolan v. Cotton*,
   572 U.S. 650 (2014) ...............................................................................14

## TABLE OF AUTHORITIES

**CASES**                                                                                     **Page**

*VanGilder v. Baker*,
    435 F.3d 689 (7th Cir. 2006) ............................................................................6

*Wade v. Daniels*,
    36 F.4th 1318 (11th Cir. 2022) .....................................................19, 20, 23, 24

*Wate v. Kubler*,
    839 F.3d 1012 (11th Cir. 2016) ....................................................................14

## **ARGUMENT**

Defendants all but concede they cannot defend the district court's *Heck* bar on the merits. For that reason, they largely pivot away from addressing its merits, arguing instead that Cendan—then-a *pro se* litigant—should be deemed to have waived or, perhaps more drastically, to be estopped from challenging the court's *Heck* ruling on appeal. Neither is warranted or just, especially given that it is plain (seemingly even to the Defendants) that the *Heck* doctrine does not apply. After all, *Heck* requires the definitive establishment of predicate facts underlying a conviction by trial or by plea; yet, as *this* Court already observed in *this* case, Cendan's plea "offers no insight into the sequence of events surrounding [Cendan's] arrest, including at what point [he] resisted." *Cendan v. Trujillo*, 779 F. App'x 688, 690 (11th Cir. 2019) ("*Cendan I*") (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008)) (brackets in original).

Defendants' attempt to defend the court's qualified immunity ruling fares no better. According to Defendants, "whether the Officers used excessive force is always an issue of law for the Court to decide." (AB at 38). While that may be true, Defendants omit that even their own cases establish that a court can reach that legal question at summary judgment *only* where the facts are undisputed or the force used is patently reasonable even when viewed on the *plaintiff's* account. Neither of those

preconditions was met here. A jury, therefore, should have—and must still—weigh which account it finds more credible.

For these and other reasons discussed below, the district court's ruling should be reversed and this case remanded so that Cendan may have a fair opportunity to present his *complete* case to a jury.

## I.    The District Court Erred In Applying *Heck* To Selectively Bar Cendan's Excessive force Claim

Defendants cast *Heck* as a sweeping doctrine that effectively immunizes officers for any force used during arrest—so long as there is a later resisting arrest plea or conviction to point to. (AB at 57–59). But, in reality, *Heck* is a narrow doctrine that applies *only* when success in the civil action would necessarily contradict the conviction. *See Dyer v. Lee*, 488 F.3d 876, 883 (11th Cir. 2007); *Sconiers v. Lockhart*, 946 F.3d 1256, 1269–70 (11th Cir. 2020) (holding that coexistence of arrestee's resistance and officer's excessive force was "not a logical impossibility"); *Henley v. Payne*, 945 F.3d 1320, 1327 (11th Cir. 2019).

Thus, to avoid a *Heck* bar, a §1983 claimant need only put forward *a* "version of the facts" under which prevailing on his claim would not *necessarily* undermine his underlying conviction. *Dyer,* 488 F.3d at 883 (permitting excessive force claim to proceed in face of *Heck* challenge because there was a "version of the facts which would allow the conviction to stand" alongside a finding of excessive force). Cendan did that here.

2

In addition, to determine if a resisting arrest conviction and excessive force claim are factually irreconcilable, *Heck* requires underlying, predicate facts—established by plea or verdict—against which a court can later compare a civil claim. *Sconiers*, 946 F.3d at 1269–70 (refusing to apply *Heck* where record "provide[d] no further facts" about the plea and thus left "no way to determine" whether officer's force was attributable to plaintiff's resistance). No such predicate facts are present here.

### a.    Cendan's Guilty Plea Offers No Predicate Facts To Which *Heck* May Attach

Cendan's plea was general in nature, ECF No. 154-12 at 1, and as a result, the record is devoid of any predicate facts that would "illuminate the sequence of events" surrounding his arrest. *Sconiers*, 946 F.3d at 1269. In fact, *this* very Court in *this* very case already found that Cendan's plea "offers no insight into the sequence of events surrounding [Cendan's] arrest, including at what point [Cendan] resisted." *Cendan I*, 779 F. App'x at 690. Therefore, nothing in the record forecloses the possibility that Cendan's conviction and civil claim may be reconciled, which is fatal to the application of *Heck*.[1]

---

[1] Recognizing the plea's factual deficiency, Defendants ask this Court to *assume* Cendan must have resisted in a way that would negate his conviction. (AB at 57–59). They offer no authority to allow such an assumption and instead stretch the definitions of the plea to match their desired fact pattern. (AB at 58–59). To do so, they ask the Court to pile inference on top of inference in their favor, which *Heck* and the Court's precedent forbids. *See Sconiers*, 946 F.3d at 1269–70; *Cendan I*, 779 F. App'x at 690.

**b.    Cendan's Excessive Force Claim Is Not Logically Inconsistent With His Resisting Arrest With Violence Plea**

Because the facts underlying Cendan's conviction remain undefined, there is ample room for both the conviction and Cendan's claim to be true: Cendan could have resisted arrest at one juncture and been the victim of excessive force at another. At summary judgment, Cendan argued that his resistance ceased when his truck collided with the police car, only after which Defendants began employing gratuitous force against him. ECF No. 173 at 4. Under this version of events, there is no tension between Cendan's conviction and excessive force claim, as Cendan's excessive force claim concerns a period distinct from that forming the basis of his plea. Because Cendan's criminal plea and civil claim are compatible under some version of events, *Heck* is plainly inapposite here and the district court's ruling was incorrect. *See Dyer*, 488 F.3d at 883; *Hadley*, 526 F.3d at 1331 (permitting excessive force claim to proceed where it was "theoretically possible that [Plaintiff] was punched then resisted, or even that he resisted first, but was punched after he stopped resisting," all of which was for a jury—not the court—to determine); *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1193 (11th Cir. 2020) (emphasizing *Heck* applies only where facts of conviction and §1983 claim are in such tension that both *necessarily* cannot be true).

4

### c.    Heck Cannot Be Applied Selectively To Cendan's Claim

The district court further erred in its application of *Heck* by using it as a partial shield—barring only the portion of Cendan's excessive force claim arising from his pre-restraint beating while still allowing scrutiny of the post-restraint force. *See* ECF No. 213 at 16–18 ("To be sure, Plaintiff's claim is circumscribed in the manner discussed above" [only the version of the facts where the officers beat Cendan after he had been handcuffed]).

*Heck's* bar is an all-or-nothing doctrine. It either precludes a §1983 claim entirely (if success on that claim would necessarily invalidate an outstanding conviction) or it does not apply at all. There is no support for Defendants' "half-in, half-out" application that carves Cendan's claim into permissible and impermissible time segments. Indeed, by conceding that one portion of Cendan's allegations can be considered on the merits, the district court and Defendants implicitly admit that success on his excessive force claim would not necessarily negate his resisting-arrest conviction, eliminating *Heck* as an obstacle to any portion of the claim. *See Cendan I*, 779 F. App'x at 690 (holding that Cendan could prevail under §1983 without invalidating his resisting arrest plea).

*Heck* operates like an on/off switch, not a dimmer. Either the §1983 claim necessarily conflicts with an existing conviction (in which case the claim is barred), or it presents no such inherent conflict (in which case it proceeds in full). As the

5

Tenth Circuit recently stated, the "*Heck* bar only applies when the potential conflict animating the rule exists"—and when no such conflict is present, *Heck* does not apply. *Graff v. Aberdeen Enterprizes*, 65 F.4th 500, 520 (10th Cir. 2023) (reversing and remanding where district court improperly held *Heck* barred plaintiffs' claims).

Defendants cite no authority endorsing their approach of a selective *Heck* bar, which contradicts the fundamental logic of *Heck* and this Court's interpretations of it. *Heck* is concerned with whether the civil claim necessarily undermines a criminal judgment, not with micromanaging which factual aspects of the claim are in tension with the conviction. *See Henley*, 945 F.3d at 1327.

Defendants' argument would have this Court split Cendan's single excessive force cause of action into temporal pieces, barring recovery for the earlier takedown but evaluating the later beating under a different standard. By their logic, once a suspect resists at all, an officer could inflict unlimited force and then invoke *Heck* to shield any accountability for that force. But courts have rejected that absurd result, which would "gut a large share of the protections provided by §1983" and imply that "once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006). The rule Defendants urge would effectively immunize officers who employ gratuitous force so long as a resisting-arrest conviction is procured. *See id.*

6

*Heck* was "not intended to be a shield to protect officers" from civil liability in this manner. *Dyer*, 488 F.3d at 884 (permitting claim to go forward *in its entirety* after determining *Heck* did not apply). Cendan's conviction for resisting arrest remains intact and undisturbed by his excessive force claim, which alleges force well beyond what was needed to effectuate the arrest. Because his §1983 claim, if successful, would not nullify the conviction, *Heck* is inapplicable.

### d.    Cendan Did Not Waive The Pre-Restraint Heck Bar Appeal

Lacking a persuasive merits defense of the *Heck* ruling, Defendants seek refuge in procedure, contending that Cendan "waived" his challenge to the *Heck* bar on pre-arrest force. (AB at 63–66). This contention is both factually incorrect and unsupportable as a matter of law.

### i.    Cendan Addressed This Issue With The District Court

Cendan has consistently challenged the application of *Heck* throughout this litigation. At summary judgment (appearing *pro se*), Cendan opposed Defendants' broad *Heck* defense in full, arguing that his excessive force claim should proceed despite the resisting-arrest conviction. *See* ECF No. 177 at 4. The distinction between "pre-restraint" and "post-restraint" force is not a new claim. Rather, because the excessive-force claim is inseverable, Cendan's challenge to the application of *Heck* to one portion of the claim was necessarily a challenge to its application to the whole claim. Moreover, in the prior appeal, Cendan challenged

the pre-restraint *Heck* ruling, and in response to this Court's jurisdictional question (after Cendan retained appellate counsel), Cendan filed an *unopposed* motion to dismiss his cross-appeal *without prejudice* precisely so he could address this issue in a later appeal. *See* USCA 11 Case: 18-14389 [DE #27] at 5–6. And on remand, through counsel, Cendan specifically challenged the lower court's pre-restraint *Heck* ruling through a motion for clarification. *See* ECF No. 269.

Although Cendan opposed *any* application of *Heck* at summary judgment, he has now focused the instant appeal on the district court's *pre-restraint Heck* bar. But that is simply a result of this case's posture in light of the district court's summary judgment error that he seeks to redress. That is, Cendan is focused on the wrongly isolated portion of the claims which the error infects. Cendan is entitled to contend on appeal that this ruling was error. Appellate review exists precisely to correct such errors.

### ii.    Applying Waiver Here Would Be Unjust

Even if Cendan did not properly raise the applicability of *Heck* below (he did), it should still be considered in the interests of justice. *See Ramirez v. Sec'y, U.S. Dept. of Transp.*, 686 F.3d 1239, 1250 (11th Cir. 2012) ("where the party seeking consideration of an argument not raised in the district court has raised no new factual questions and the record supports its legal argument, we have held that refusal to consider that argument could result in a miscarriage of justice" (internal quotation

marks omitted)). This principle is especially true given that Cendan was proceeding *pro se* at the time. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks and citations omitted) (cleaned up)).

Here, all relevant facts—the circumstances of the arrest and the content of the guilty plea—are in the record. No additional fact-finding or prejudice to Defendants would result from considering the issue. But refusing to consider it would result in an unjust affirmation of a legal error—upholding a summary judgment that rests on a clear misapplication of *Heck*.

Defendants' attempt to evade a review on the merits through a waiver argument is a red herring that should be flatly rejected.

### e.    Judicial Estoppel Is Inapplicable

Equally meritless is Defendants' attempt to invoke judicial estoppel. They contend that Cendan previously advanced a factual narrative inconsistent with his current argument and should therefore be estopped from "changing his story." (AB at 52–56). This argument distorts both the record and the standard for applying judicial estoppel.

Judicial estoppel is "intended to prevent the perversion of the judicial process" by prohibiting parties from deliberately switching positions to suit the exigencies of

the moment. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). It is an extraordinary remedy, applied only when the inconsistency would seriously undermine the integrity of the courts. *See id.*

Judicial estoppel is thus inapplicable where, like here, the party asserting the doctrine fails to establish that the opposing party (1) took a later position that is "clearly inconsistent" with its earlier position; (2) succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the new position would create the perception that either the first or second court was misled; and (3) would derive an unfair advantage if not estopped. *Id.* at 750–51. Defendants cannot satisfy any of these factors.

### i.    There Are No Inconsistent Positions

First, Cendan's positions are not "clearly inconsistent" in any meaningful sense. The purported inconsistency identified by Defendants—that Cendan "once maintained" his worst injuries occurred after he was restrained, whereas he "now" argues they were inflicted before he was fully restrained—is overstated and immaterial. (AB at 52). Throughout this case, spanning almost a full decade now, Cendan's contention has remained the same: Defendants used excessive, unlawful force during the course of his arrest (before and after handcuffing), causing severe injury. That claim has never wavered. Cendan has always alleged a continuous beating from the moment Defendants pulled him from his truck until after he was

placed in handcuffs. *See e.g.*, ECF No. 154-10 at 33 ("Q. So if I have your *initial* written paperwork to internal affairs it will reflect that you complained of a beating *both before* and after handcuffing? A. *Yes*.) (emphasis added). On appeal, Cendan has not changed his factual narrative but has merely focused on the issues that are pertinent at this stage of the proceedings. At most, Cendan's argument on appeal highlights an aspect of the timeline that he has argued all along: even before he was completely subdued, he was subjected to disproportionate force. This does not contradict his prior assertions. It complements them. Minor differences in phrasing or focus do not equate to the kind of deliberate self-contradiction that judicial estoppel targets.

### ii.    The District Court *Rejected* Cendan's Instant Position

Second, Cendan did not convince any court to accept a contrary factual position earlier in the litigation. In fact, far from "prevailing" on a different theory, Cendan's pre-arrest excessive force claim was dismissed in its entirety at summary judgment. ECF No. 213 at 17–18. No court has ever adopted a finding that Cendan was injured only after being restrained (or any specific finding about the timing of his injuries). Rather, the district court merely held that he could only discuss the injuries sustained after he was arrested at trial. *Id.* That is the very ruling Cendan is challenging now. There is no danger that this Court (or the district court on remand)

would be "misled" by allowing Cendan to proceed on his theory—the earlier position was not credited or relied upon judicially.

### iii.      Cendan Will Derive No Unfair Advantage

Finally, Cendan gains no unfair advantage by advancing his present argument. He is not engaging in "fast and loose" gamesmanship with the courts; he is simply advocating that his long-standing excessive force claim be allowed to proceed on the merits. There is nothing inequitable about that.

To the contrary, it is Defendants who seek an unfair windfall by invoking judicial estoppel to avoid accountability. They ask the Court to penalize Cendan— a *pro se* plaintiff for a vast majority of this litigation—for an imagined inconsistency that did not mislead anyone and has no effect other than to give them a doctrinal escape hatch. Adopting Defendants' estoppel theory would turn the doctrine on its head—using it as a sword to cut off a claim, rather than as a shield to protect the integrity of the judiciary.

This case bears none of the hallmarks that warrant judicial estoppel. Cendan's conduct has made no mockery of the judicial system. He has pressed a consistent grievance throughout this litigation and is simply tailoring his legal arguments to the issues at hand. Defendants' invitation to estop Cendan from pursuing his claim should be declined.

## II.    The District Court Erred In Applying Qualified Immunity To Selectively Bar Cendan's Excessive force Claim

Defendants' qualified immunity argument hinges on a mistaken premise: "whether the Officers used excessive force is always an issue of law for the Court to decide." (AB at 34) (citing *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013)).[2] But in fact, qualified immunity almost always requires trial, absent the rare case when the court can decide it entirely on the *nonmoving* party's version of events. *Cutino v. Untch*, 79 F. Supp. 3d 1305, 1312 (S.D. Fla. 2015). Absent that, summary judgment should be denied where, as here, there are "genuine issues of material fact as to an asserted qualified immunity defense." *Chasse v. McCraney*, 174 Fed. App'x 473, 475 (11th Cir. 2006) (affirming denial of qualified immunity at summary judgment); *see also* (IB at 29–30) (collecting cases denying summary judgment due to factual disputes). This is what caused the district court to err here, as its ruling turned entirely on—contrary to *Cendan's* telling of the facts—*Defendants'* contention that Cendan aggressively resisted arrest *after* he crashed into the patrol car.[3]

---

[2] In the Initial Brief, Cendan explained that the district court erred by failing to accept his account and that genuine issues of material fact concerning his resistance and Defendants' use of force precluded summary judgment. (IB at 28). Cendan welcomes Defendants' invitation to more deeply analyze their qualified immunity defense, as that analysis underscores the clear inappropriateness of invoking the immunity here.

[3] To the extent that Defendants suggest Cendan's plea to resisting arrest shows that the force used after the collision was reasonable, this argument fails because the plea contains no factual colloquy outlining the time of resistance, which was plausibly limited to the police chase and ended upon the collision. ECF Nos. 154-12 at 1, 154-16.

Because the district court did not take Cendan's view of the facts and Defendants are not entitled to immunity under that view, the court erroneously granted summary judgment.

### a.    The District Court Failed To View The Record In Cendan's Favor

"When considering qualified immunity on a defendant's motion for summary judgment, [the Court] consider[s] the record in the light most favorable to the plaintiff, eliminating all issues of fact." *Wate v. Kubler*, 839 F.3d 1012, 1019 (11th Cir. 2016); *see also Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (same). Thus, courts must "construe the evidence in favor of the plaintiff and decide whether the defendant is entitled to qualified immunity under the plaintiff's version of the facts." *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015). Under this approach, the "court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute." *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) (internal quotation marks omitted). Critically, a district court cannot grant a defendant officer immunity from an unreasonable force claim where the "legal question is completely dependent upon which view of the facts is accepted by the jury." *Sova v. Mt.*

*Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) (internal quotation marks omitted) (cleaned up).[4]

In resolving Defendants' summary-judgment motion on qualified immunity, the district court failed to consider the record in the light most favorable to Cendan. In its Order, the court recited each party's version of events, which were, at critical points, not just divergent but irreconcilable:

| Contrasting Versions of Events at Summary Judgment ||
| Cendan | Defendants |
|---|---|
| "[H]e never once resisted in the parking lot." ECF No. 213 at 5. | Cendan resisted violently, maintaining that after receiving blows and with Gonzalez "on top of" him, Cendan "resisted Gonzalez, flailing his arms and trying to strike the officers" and "was spitting and at one point even bit Gonzalez's hand." ECF No. 213 at 7. |
| After he entered the parking lot and collided with the patrol car, "he was sitting in his car surrounded by Metro-Dade police officers with their guns drawn and aimed at him" and "complied [with Defendants' commands] by raising both his arms above his head to show he had no weapons." ECF No. 213 at 4. | Cendan "did not comply with their instructions" after he collided with the patrol car. ECF No. 213 at 6. |

---

[4] As mentioned above, Defendants rely on this Court's decision in *Myers*, which in turn relies on the Supreme Court's *Scott* decision, for the proposition that "whether the Officers used excessive force is always an issue of law for the Court to decide." (AB at 34). However, *Myers* and *Scott* merely stand for the undisputed proposition that the applicability of qualified immunity becomes a question of law only upon the elimination of any factual dispute by viewing the record in the light most favorable to the nonmoving party. *See Myers*, 713 F.3d at 1328 (citing *Scott*, 550 U.S. at 381 n.8 ("At the summary judgment stage, . . . once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of Scott's actions . . . is a pure question of law" (internal citations omitted)).

| | |
|---|---|
| Cendan "lowered the window and pleaded with the officers not to beat him up, when Gonzalez reached into the vehicle and opened the door." ECF No. 213 at 4. | Rodriguez—not Gonzalez—"reached in through the open window, and manually opened the door from the inside" and "grabbed Plaintiff inside the truck." ECF No. 213 at 7. |
| "Gonzlez struck him on the face with a black object as Trujillo, Pichardo, and Rodriguez held him," and then upon being handcuffed, Rodriguez "kicked [him] in the head, destroying his eye socket," "Trujillo also kicked him in the face and was joined in the beating by Gonzalez, Coello, and Officer Marloys Morales" before other officers "surrounded [him] and shouted words of the encouragement to the officers assaulting him." ECF No. 213 at 4–5. | Gonzalez merely "re-directed" Cendan to the ground and struck him at most three times. ECF No. 213 at 7. Defendants "insist[ed] that no one used any force" after Cendan was handcuffed, and that "Officers Trujillo, Morales, and Coello never touched [Cendan] at all during his apprehension." ECF No. 213 at 7. |

Despite Cendan's claim that "he never once resisted in the parking lot," ECF No. 213 at 5, the district court granted Defendants immunity for their conduct on the impermissible assumption that Cendan continued resisting after the collision. The district court, in other words, improperly accepted Defendants' version of the facts over Cendan's.

Specifically, the court held that Defendants were immune for "force they used on Plaintiff: (i) when they struck him while he was still in his truck, refusing to open the door and peaceably exit; (ii) when they brought him out of his car and to the ground; and (iii) *at any other time he was resisting arrest* . . . ." ECF No. 213 at 20–21 (emphasis added). None of that is consistent with Cendan's version of event that

"he never once resisted in the parking lot" and complied with the Officers' commands after the collision. ECF No. 213 at 5.

But if there were any doubt about which version of the facts the district court relied on, the court extended immunity up through the point at which "*[Cendan] had ceased resisting arrest* and posed no threat." ECF No. 213 at 21 (emphasis added). The district court, in other words, decided that Defendants' use of force until then was reasonable and thus eligible for immunity—even though Cendan's telling of what happened conceded no such conclusion. According to his view, which the court needed to assume, Cendan raised his hands above his head to show he was unarmed, complied with Defendants' commands, was surrounded by officers pointing guns at him, and was removed from his vehicle and subdued. Thus, the court failed to credit Cendan's version of the facts in granting summary judgment: textbook legal error.

Defendants hope to excuse the error by arguing Cendan's "claim of surrender is refuted by both video footage, which shows him resisting efforts to leave his truck, and his own admission that he did not exit the truck despite orders to do so." (AB at 31). The video proves no such thing. Even the district court observed that the video was "not clear," explaining that the video captures no image of Cendan during critical parts of the encounter. ECF No. 213 at 3. Per the district court, "[t]he video does *not* show when Plaintiff was handcuffed; it is difficult to identify Plaintiff throughout the video." ECF No. 213 at 4 (emphasis added). Thus, the videotape

17

cannot justify the court's failure to construe the record in Cendan's favor. *See Brooks v. Miller*, 78 F.4th 1267, 1271-72 (11th Cir. 2023) (videotape controls "only when the video actually proves that the plaintiff's version of the facts cannot be true" and otherwise, the Court must "accept the nonmoving party's version of the facts").

Finally, Defendants seek to validate the district court's ruling on *summary judgment* based on evidence that came out at *trial*. *See, e.g.,* (AB at 5, 7). As an initial matter, this appeals to an incorrect legal standard. "In reviewing a district court's grant of summary judgment, a federal appellate court may examine *only* the evidence which was before the district court when the latter decided the motion for summary judgment." *Conner v. Lafarge*, 343 Fed. App'x 537, 540 (11th Cir. 2009) (internal quotation marks and citations omitted) (emphasis added). What came out at trial—especially one tainted by improper rulings that barred Cendan from proffering a full rendition of his version of events—can have no bearing on whether the Court ruled correctly at summary judgment. Moreover, despite Defendants' cherry-picked snippet from the trial transcript, Cendan maintained at trial that, although he resisted arrest (including in the parking lot until he collided with a police vehicle), his resistance stopped when the truck stopped—a still-disputed factual issue that was also addressed by experts, the parties' counsel, and the district court throughout trial. *See* Trial Tr., Dec. 9, 2021, at 151:10 to 167:4; Trial Tr., Dec. 10, 2021, at 3:12 to 4:2, 62:24 to 63:8, 96:1 to 97:4; Trial Tr., Dec. 13, 2021, at 44:1-25.

In reviewing the district court's summary judgment ruling, the errors made below must be corrected and a determination made on whether Defendants are entitled to qualified immunity against the record construed most favorably to Cendan as it stood at the summary judgment stage. *See Montero v. Nandlal*, 597 Fed. App'x 1021, 1024 (11th Cir. 2014) ("We review *de novo* a district court's disposition of a summary judgment motion that is based on qualified immunity and apply the same legal standards as the district court. In conducting our review, we resolve any factual disputes in favor of the plaintiff and then decide whether the defendant is entitled to qualified immunity under that version of the facts" (internal citations omitted)).

### b.    Defendants Are Not Entitled To Qualified Immunity

Now armed with the controlling universe of facts, the question is simply whether, based on those facts, the district court erred in granting Defendants qualified immunity for the use of extreme, continuous force at a point in time when Cendan was no longer resisting arrest. But qualified immunity does not protect an officer from civil liability where, like here, (1) the "officer violated a federal statutory or constitutional right," and (2) the "unlawfulness of the officer's conduct was clearly established at the time." *Wade v. Daniels*, 36 F.4th 1318, 1323 (11th Cir. 2022). Viewed against Cendan's account of the events, Defendants' conduct plainly violated his clearly established constitutional right to be free from gratuitous force.

19

###### i.    Defendants Violated Cendan's Constitutional Rights

The use of non-deadly force is unconstitutional where, like here, the following factors collectively reflect an unreasonable use of force: "(1) the severity of the suspect's crime, (2) whether the suspect poses an immediate threat of harm to others, (3) whether the suspect is actively resisting arrest or trying to flee, (4) the need for the use of force, (5) the relationship between the need for force and the amount of force used, and (6) how much injury was inflicted." *Wade*, 36 F.4th at 1325.[5] An officer's use of force is "unreasonable" where, like here, an "objectively reasonable officer in the same situation could have believed the use of force" was excessive. *Id.* at 1323 (quoting *Brown v. Huntsville*, 608 F.3d 724, 738 (11th Cir. 2010)).

While Cendan admittedly committed serious offenses, the remaining five *Wade* factors weigh decisively in his favor. Given that (under Cendan's version of the facts) he was complying with Defendants' commands, had his hands above his head to show he was unarmed, and was surrounded by officers with guns pointed at his head, Cendan did not pose any immediate threat to Defendants or the after the

---

[5] In their brief, Defendants treat the *Wade* factors as distinct from those enumerated in *Graham v. Connor*, 490 U.S. 386 (1989). (AB at 24) (citing *Graham*, 490 U.S. at 389 (providing that the Fourth Amendment's reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight")). Because the Wade factors include those outlined in *Graham*, we analyze them as one.

parking lot collision. Cendan was not actively resisting or fleeing at that point,[6] as he "never once resisted in the parking lot." ECF No. 213 at 5. Next, the need for the use of force was marginal given that Cendan's vehicle had stopped, he had ceased resisting, and he was surrounded, compliant, and showing that he was unarmed.

The fifth and sixth factors also weigh in Cendan's favor, as the life-altering amount of force used far exceeded the limited force needed or justifiable. Striking, punching, kicking, and slamming Cendan to the point that his eyeball popped out of its socket, his top-front teeth fell out, his cheek bone was fractured, the bone and cartilage in his nose was destroyed, and his face was left so deformed that he earned the moniker "the Martian" was—to put it mildly—grossly disproportionate to the force needed to restrain the surrounded, surrendering sixty-two-year-old Cendan. *Cf. Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997) (holding that a blow resulting in a broken arm "was obviously unnecessary to restrain even a previously fractious arrestee"); ECF No. 213 at 6. Defendants' use of force left Cendan permanently blind in his right eye and with significant visual impairments in his left eye, a bone protruding into his mouth, and a speech impediment. (IB at 28–29); *Stephens v. DeGiovanni*, 852 F.3d 1298, 1324 (11th Cir. 2017) ("the amount of force used by an

---

[6] The video appears to corroborate Cendan's version, showing that—while he did crash into an officer's vehicle in the parking lot *before* surrendering and being dragged out—he does not appear to offer any resistance after that point. Thus, his pleading guilty to resisting with violence for having crashed into an officer's vehicle is not inconsistent with his excessive force claim arising out of the subsequent events—namely, a two-to-five-minute beating where he claims to not have resisted at all.

officer in seizing and arresting a suspect must be reasonably proportionate to the need for that force" (internal quotation marks and citations omitted)). The photographs of Cendan make obvious the gravity of the injuries inflicted by Defendants:



ECF 178–7 at 5. Thus, according to Cendan's account, Defendants' conduct amounted to an unreasonable, gratuitous use of force against a non-resisting suspect in plain violation of his constitutional rights.

22

### ii.     Cendan's Constitutional Right To Be Free From Excessive Force Was Clearly Established At The Time

The only remaining inquiry in the qualified immunity analysis is whether Cendan's right to be free of excessive force was clearly established when Defendants disfigured him. It was. "A right is clearly established if (1) a case with facts materially similar has been decided by the United States Supreme Court, the Eleventh Circuit, or the applicable state supreme court before the challenged conduct; (2) a broader, clearly established principle controls the facts of the situation; or (3) the conduct so obviously violates the constitution that prior case law is unnecessary." *Wade*, 36 F.4th at 1323.

The law in this Circuit has long been clear that "serious and substantial injuries caused during a suspect's arrest when a suspect is neither resisting an officer's commands nor posing a risk of flight may substantiate an excessive force claim." *Sebastian v. Ortiz*, 918 F.3d 1301, 1311 (11th Cir. 2019) (collecting cases). This Court has specifically held that the use of gratuitous force against a suspect who has submitted to officers' authority violates a clearly established right, even if the suspect has not yet been handcuffed. *See Priester v. Riviera Beach.*, 208 F.3d 919, 927 (11th Cir. 2000) (allowing K-9 to attack suspect who was not handcuffed but submitted to officers' demands and raised his hands to show he did not pose a threat violated clearly established right); *Smith*, 127 F.3d at 1419–20 (officer violated clearly established right where after suspect ceased fleeing and surrendered, officer

23

put his knee into suspect's back while he was on the ground and broke suspect's arm as he pulled it to apply handcuffs); *Patel v. Madison*, 959 F.3d 1330, 1340 (11th Cir. 2020) (affirming denial of summary judgment on qualified immunity where there were factual disputes regarding whether suspect, who was not handcuffed, resisted arrest).[7] Thus, the Court's precedents provided Defendants with "'fair warning' that their conduct was unconstitutional" so as to make the violated right clearly established. *Wade*, 36 F.4th at 1323 (quoting *Sebastian*, 918 F.3d at 1311).

Because the district court failed to credit Cendan's version of the facts, which show that Defendants violated Cendan's clearly established constitutional right to be free from gratuitous force, the lower court erred in granting summary judgment on Cendan's excessive force claim. *See Sconiers*, 946 F.3d at 1264–65, 1270 (11th Cir. 2020) (reversing summary judgment on excessive force claim where district court failed to credit nonmoving party's factual narrative); *see also Sova*, 142 F.3d at 903 ("Where, as here, the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.").

---

[7] In *Patel*, the Court expressly rejected the argument that "precedent prohibiting the use of gratuitous and excessive force against non-resisting suspects applies only when the suspect is handcuffed." 959 F.3d at 1340 (citing *Stephens*, 852 F.3d at 1328 n.33 ("While these cases involve plaintiffs who were handcuffed after their arrest before excessive force was used by the officer, the same rationale applies to the use of gratuitous force when the excessive force is applied prior to the handcuffing but in the course of the investigation and arrest . . . .")).

## **CONCLUSION**

Because it erred in its application of *Heck* and qualified immunity, the district court should be reversed and this case remanded so that Cendan can present his full case—one that addresses *both* his post- *and* pre-restraint circumstances—to a jury.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel: (305) 374-8500
Fax: (305) 789-7799

By: /s/ *Rebecca M. Plasencia*
Rebecca M. Plasencia – FBN 861901
rebecca.plasencia@hklaw.com
Anthony J. Sirven – FBN 125879
Anthony.Sirven@hklaw.com
Gabriel S. Godoy-Dalmau – FBN 1036181
Gabriel.Godoy-Dalmau@hklaw.com
Jason A. Fitzgerald – FBN 6005433
Jason.Fitzgerald@hklaw.com
Chazz T. Freeman – FBN 1050718
Chazz.Freeman@hklaw.com

*Pro Bono Counsel for Plaintiff/Appellant,
Rafael Cendan*

25

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 6,071 words, excluding the parts of the brief excluded by Rule 32(f) and Eleventh Circuit Rule 32-4. This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ *Rebecca M. Plasencia*
Rebecca M. Plasencia

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 26th day of March, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System.

/s/ *Rebecca M. Plasencia*
Rebecca M. Plasencia

#518435943_v6